# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| _____ | § |
| | § |
| **AUGUSTUS A. ADAMS** and | § |
| **DIANE ADAMS**, | § |
| | § |
| Plaintiffs, | § |
| v. | § |
| | § |
| **4520 CORP., INC.** | § |
| individually and as successor-in-interest to | § |
| BENJAMIN F. SHAW COMPANY; | § |
| | § |
| **3M COMPANY** | § |
| f/k/a MINNESOTA MINING AND | § |
| MANUFACTURING COMPANY; | § |
| | § |
| **AIR & LIQUID SYSTEMS CORPORATION** | § |
| individually and as successor-in-interest to | § |
| BUFFALO PUMPS, INC.; | § |
| | § |
| **AMETEK, INC.** | § |
| individually and as successor-in-interest to | § |
| HAVEG INDUSTRIES, INC., successor-in- | § |
| interest to HERCULES, INC.; | § |
| | § |
| **ARMSTRONG INTERNATIONAL, INC.;** | § |
| | § |
| **CHAMPLAIN CABLE CORPORATION** | § |
| individually and as successor-in-interest to | § |
| HERCULES, INC., successor-in-interest to | § |
| HAVEG INDUSTRIES, INC.; | § |
| | § |
| **COVIL CORPORATION**; | § |
| | § |
| **CRANE CO.**; | § |
| | § |
| **DANIEL INTERNATIONAL** | § |
| **CORPORATION**; | § |
| | § |
| **THE DOW CHEMICAL COMPANY**; | § |
| | § |
| **FISHER CONTROLS INTERNATIONAL** | § |
| **LLC**; | § |
| | § |

**CIVIL ACTION NO. _____**


**CIVIL ACTION COMPLAINT**


**ASBESTOS – MESOTHELIOMA**


**JURY TRIAL DEMANDED**

**FLOWSERVE US INC.**
individually and as successor-in-interest to
LAWRENCE PUMPS, INC., and as successor-
in-interest to EDWARD VALVES, INC.;

**FLUOR CONSTRUCTORS
INTERNATIONAL**
f/k/a/ FLUOR CORPORATION;

**FLUOR CONSTRUCTORS
INTERNATIONAL, INC.**;

**FLUOR DANIEL SERVICES
CORPORATION**;

**FLUOR ENTERPRISES, INC.**;

**FMC CORPORATION**;

**FOSTER WHEELER ENERGY
CORPORATION**;

**GENERAL ELECTRIC COMPANY**;

**GOULDS PUMPS, INCORPORATED**

**GRINNELL LLC**
d/b/a GRINNELL CORPORATION;

**HERCULES LLC**
f/k/a HERCULES INCORPORATED;

**HOK GROUP, INC.**
f/k/a HELLMUTH, OBATA AND
KASSABAUM, INC., individually and as
successor-in-interest to CRS SIRRINE as
successor-in-interest to J.E. SIRRINE;

**HOWDEN NORTH AMERICA INC.**
f/k/a HOWDEN BUFFALO INC., individually
and as successor-in-interest to BUFFALO
FORGE COMPANY;

**METROPOLITAN LIFE INSURANCE
COMPANY**
a wholly owned subsidiary of METLIFE INC.;

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**MINE SAFETY APPLIANCES COMPANY, LLC;**

§
§
§

**RUST ENGINEERING & CONSTRUCTION, INC.**
individually and as successor-in-interest to SIRRINE ENVIRONMENTAL CONSULTANTS, INC.;

§
§
§
§
§
§
§

**RUST INTERNATIONAL INC.**
individually and as successor-in-interest to SIRRINE ENVIRONMENTAL CONSULTANTS, INC.;

§
§
§
§
§

**UNION CARBIDE CORPORATION;**

§
§
§

**VIACOMCBS INC.**
f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;

§
§
§
§
§
§
§
§
§

**VIKING PUMP, INC.;**

§
§

**VISTRA CORP.**
f/k/a VISTRA ENERGY CORP.
individually and as successor-in-interest to CRS SIRRINE a/k/a CRSS, as successor-in-interest to J.E. SIRRINE;

§
§
§
§
§
§

**VISTRA INTERMEDIATE COMPANY LLC**
individually and as successor-in-interest to CRSS INC.;

§
§
§
§

**THE WILLIAM POWELL COMPANY;**

§
§
§

                    Defendants.

§

---

## CIVIL ACTION COMPLAINT

Plaintiffs, **AUGUSTUS A. ADAMS** and **DIANE ADAMS**, sue the above-named

Defendants for compensatory and punitive damages, by and through their attorneys, Wallace and

Graham, PA and Dean Omar Branham Shirley, LLP, and hereby bring this Civil Action Complaint, and allege:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

2.     This Court has personal jurisdiction over the Defendants because Plaintiffs' claims arise from Defendants' conduct in:

(a)     Transacting business in this State, including the sale, supply, purchase, and/or use of asbestos and/or asbestos-containing products, within this State;

(b)     Contracting to supply services or things in the State;

(c)     Commission of a tortious act in whole or in part in this State;

(d)     Having an interest in, using, or possessing real property in this State; and/or

(e)     Entering into a contract to be performed in whole or in part by either party in this State.

3.     All of the named Defendants are foreign corporations whose substantial and/or systematic business in North Carolina caused injury to Plaintiffs in this State, which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute and the United States Constitution.

4.     Pursuant to 28 USC §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

## GENERAL ALLEGATIONS

5.     Plaintiff Augustus A. Adams has been diagnosed with mesothelioma.

6. Each Defendant, or its predecessors in interest, that manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in North Carolina and other states at times relevant to this action are referred to herein as "Product Defendants." At all times relevant to this action, the Product Defendants and the predecessors of the Product Defendants for whose actions the Product Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw materials.

7. Plaintiffs' claims against the Product Defendants, as defined herein, arise out of Defendants' purposeful efforts to serve directly or indirectly the market for their asbestos and/or asbestos-containing products in North Carolina, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within North Carolina.

8. Plaintiff Augustus A. Adams' cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Plaintiff's mesothelioma and other related injuries and therefore under North Carolina law is the legal cause of Plaintiff's injuries and damages.

9. Plaintiff Augustus A. Adams was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

10. Plaintiff Augustus A. Adams worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

11. Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an "alternate entity" as hereinafter defined. Defendants are liable for the acts of their "alternate entity" and each of them, in that there has been a corporate

name change, Defendant is the successor by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entities" have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such defendant enjoys the goodwill originally attached to each "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| 4520 CORP., INC. | BENJAMIN F. SHAW COMPANY |
| 3M COMPANY | MINNESOTA MINING AND MANUFACTURING COMPANY |
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| AMETEK, INC. | HAVEG INDUSTRIES, INC., HERCULES, INC. |
| CHAMPLAIN CABLE CORPORATION | HERCULES, INC., HAVEG INDUSTRIES, INC. |
| FLOWSERVE US INC. | LAWRENCE PUMPS, INC., EDWARD VALVES, INC. |
| FLUOR CONSTRUCTORS INTERNATIONAL | FLUOR CORPORATION |
| GRINNELL LLC | GRINNELL CORPORATION |
| HERCULES LLC | HERCULES INCORPORATED |
| HOK GROUP INC. | HELLMUTH, OBATA AND KASSABAUM, INC., CRS SIRRINE, and J.E. SIRRINE |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| HOWDEN NORTH AMERICA INC. | HOWDEN BUFFALO INC., BUFFALO FORGE COMPANY |
| METROPOLITAN LIFE INSURANCE COMPANY | METLIFE INC. |
| RUST ENGINEERING & CONSTRUCTION, INC. | SIRRINE ENVIRONMENTAL CONSULTANTS, INC. |
| RUST INTERNATIONAL INC. | SIRRINE ENVIRONMENTAL CONSULTANTS, INC. |
| VIACOMCBS INC. | CBS CORPORATION, VIACOM, INC., and WESTINGHOUSE ELECTRIC CORPORATION |
| VISTRA CORP. | VISTRA ENERGY CORP., CRS SIRRINE, CRSS, and J.E. SIRRINE |
| VISTRA INTERMEDIATE COMPANY LLC | CRSS INC. |

12.     Plaintiffs have been informed and believe, and thereon allege, that at all times herein mentioned, Defendants or their "alternate entities" were or are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of North Carolina, or the laws of some other state or foreign jurisdiction, and that said Defendants were and/or are authorized to do business in the State of North Carolina, and that said Defendants have regularly conducted business in the State of North Carolina.

13.     Plaintiffs have been informed and believe, and thereon allege, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

14.     As a direct and proximate result of the conduct as alleged within, Plaintiff Augustus A. Adams suffered permanent injuries, including, but not limited to, mesothelioma and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

15.     As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff Augustus A. Adams incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time.  Plaintiffs request leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiff's medical treatment is ascertained.

16.     As a further direct and proximate result of the conduct as hereinafter alleged, Plaintiff Augustus A. Adams has incurred, and will incur, loss of profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs. Plaintiffs pray leave to supplement this Court and all parties accordingly to conform to proof at the time of trial.

## **PARTIES**

17.     Plaintiffs, Augustus A. Adams and Diane Adams, are citizens of the State of North Carolina where Plaintiff Augustus A. Adams was exposed to asbestos during the course of his career in the State of North Carolina.

18.     At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing,

modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos and products manufactured for foreseeable use with asbestos products.

19.    Defendant, **4520 CORP., INC.**, individually and as successor-in-interest to BENJAMIN F. SHAW COMPANY, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Oregon. At all times material hereto, 4520 CORP., INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of asbestos-containing thermal insulation and materials. 4520 CORP., INC. is sued as a Product Defendant. Plaintiffs' claims against 4520 CORP., INC. arise out of this Defendant's business activities in the State of North Carolina.

20.    Defendant, **3M COMPANY**, f/k/a MINNESOTA MINING AND MANUFACTURING COMPANY, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Minnesota. At all times material hereto, 3M COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, or products fraudulently marketed to prevent asbestos exposure including, but not limited to, 3M masks and other asbestos-containing products. 3M COMPANY is sued as a Product Defendant. Plaintiffs' claims against 3M COMPANY arise out of this Defendant's business activities in the State of North Carolina.

21.     Defendant, **AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in-interest to BUFFALO PUMPS, INC., was and is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. At all times material hereto, AIR & LIQUID SYSTEMS CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Buffalo pumps. AIR & LIQUID SYSTEMS CORPORATION is sued as a Product Defendant. Plaintiffs' claims against AIR & LIQUID SYSTEMS CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

22.     Defendant, **AMETEK, INC.**, individually and as successor-in-interest to HAVEG INDUSTRIES, INC., successor-in-interest to HERCULES, INC., was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, AMETEK, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Chemtite pipes and Haveg pipes. AMETEK, INC. is sued as a Product Defendant. Plaintiffs' claims against AMETEK, INC. arise out of this Defendant's business activities in the State of North Carolina.

23.     Defendant, **ARMSTRONG INTERNATIONAL, INC.**, was and is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan. At all times material hereto, ARMSTRONG INTERNATIONAL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing

products, materials, or equipment, including, but not limited to, asbestos-containing Armstrong steam traps and strainers. ARMSTRONG INTERNATIONAL, INC. is sued as a Product Defendant. Plaintiffs' claims against ARMSTRONG INTERNATIONAL, INC. arise out of this Defendant's business activities in the State of North Carolina.

24.     Defendant, **CHAMPLAIN CABLE CORPORATION**, individually and as successor-in-interest to HERCULES, INC., successor-in-interest to HAVEG INDUSTRIES, INC., was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Vermont. At all times material hereto, CHAMPLAIN CABLE CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Haveg pipes. CHAMPLAIN CABLE CORPORATION is sued as a Product Defendant. Plaintiffs' claims against CHAMPLAIN CABLE CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

25.     Defendant, **COVIL CORPORATION**, was a corporation incorporated under the laws of the State of South Carolina with its principal place of business in South Carolina. At all times material hereto, COVIL CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of asbestos-containing thermal insulation. COVIL CORPORATION is sued as a Product Defendant. Plaintiffs' claims against COVIL CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

26.     Defendant, **CRANE CO.**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material

hereto, CRANE CO. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Crane valves and Chempumps. CRANE CO. is sued as a Product Defendant. Plaintiffs' claims against CRANE CO. arise out of this Defendant's business activities in the State of North Carolina.

27.     Defendant, **DANIEL INTERNATIONAL CORPORATION**, was and is a corporation incorporated under the laws of the State of South Carolina with its principal place of business in South Carolina. At all times material hereto, DANIEL INTERNATIONAL CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of asbestos-containing thermal insulation and materials. DANIEL INTERNATIONAL CORPORATION is sued as a Product Defendant. Plaintiffs' claims against DANIEL INTERNATIONAL CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

28.     Defendant, **THE DOW CHEMICAL COMPANY**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Michigan. At all times material hereto, THE DOW CHEMICAL COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Dowtherm products. THE DOW CHEMICAL COMPANY is sued as a Product Defendant. Plaintiffs' claims

against THE DOW CHEMICAL COMPANY, arise out of this Defendant's business activities in the State of North Carolina.

29. Defendant, **FISHER CONTROLS INTERNATIONAL LLC** was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Missouri. After due diligence, Plaintiffs believe that FISHER CONTROLS INTERNATIONAL LLC is owned by EMPCO Holdings, Inc., a wholly owned subsidiary of Emerson Electric Co., which is a publicly held company. At all times material hereto, FISHER CONTROLS INTERNATIONAL LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Fisher valves. FISHER CONTROLS INTERNATIONAL LLC is sued as a Product Defendant. Plaintiffs' claims against FISHER CONTROLS INTERNATIONAL LLC arise out of this Defendant's business activities in the State of North Carolina.

30. Defendant, **FLOWSERVE US INC.**, individually and as successor-in-interest to LAWRENCE PUMPS, INC. and as successor-in-interest to EDWARD VALVES, INC., was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, FLOWSERVE US INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Lawrence pumps and Edward valves. FLOWSERVE US INC. is sued as a Product Defendant. Plaintiffs' claims against FLOWSERVE US INC. arise out of this Defendant's business activities in the State of North Carolina.

31. Defendant, **FLUOR CONSTRUCTOS INTERNATIONAL**, f/k/a FLUOR CORPORATION, was and is a corporation incorporated under the laws of the State of California

with its principal place of business in Texas. At all times material hereto, FLUOR CONSTRUCTORS INTERNATIONAL mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of asbestos-containing thermal insulation and materials. FLUOR CONSTRUCTORS INTERNATIONAL is sued as a Product Defendant. Plaintiffs' claims against FLUOR CONSTRUCTORS INTERNATIONAL arise out of this Defendant's business activities in the State of North Carolina.

32. Defendant, **FLUOR CONSTRUCTORS INTERNATIONAL, INC.**, was and is a corporation incorporated under the laws of the State of California with its principal place of business in Texas. At all times material hereto, FLUOR CONSTRUCTORS INTERNATIONAL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of asbestos-containing thermal insulation and materials. FLUOR CONSTRUCTORS INTERNATIONAL, INC. is sued as a Product Defendant. Plaintiffs' claims against FLUOR CONSTRUCTORS INTERNATIONAL, INC. arise out of this Defendant's business activities in the State of North Carolina.

33. Defendant, **FLUOR DANIEL SERVICES CORPORATION**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, FLUOR DANIEL SERVICES CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of

asbestos-containing thermal insulation and materials. FLUOR DANIEL SERVICES CORPORATION is sued as a Product Defendant. Plaintiffs' claims against FLUOR DANIEL SERVICES CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

34.     Defendant, **FLUOR ENTERPRISES, INC.**, was and is a corporation incorporated under the laws of the State of California with its principal place of business in Texas. At all times material hereto, FLUOR ENTERPRISES, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the installation and removal of asbestos-containing thermal insulation and materials. FLUOR ENTERPRISES, INC. is sued as a Product Defendant. Plaintiffs' claims against FLUOR ENTERPRISES, INC. arise out of this Defendant's business activities in the State of North Carolina.

35.     Defendant, **FMC CORPORATION**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, FMC CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Link-Belt cranes, heavy construction equipment, pumps, and conveying equipment. FMC CORPORATION is sued as a Product Defendant. Plaintiffs' claims against FMC CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

36.     Defendant, **FOSTER WHEELER ENERGY CORPORATION**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, FOSTER WHEELER ENERGY CORPORATION

mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Foster Wheeler boilers. FOSTER WHEELER ENERGY CORPORATION is sued as a Product Defendant. Plaintiffs' claims against FOSTER WHEELER ENERGY CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

37.     Defendant, **GENERAL ELECTRIC COMPANY**, was and is a corporation incorporated under the laws of the State of New York with its principal place of business in Massachusetts. At all times material hereto, GENERAL ELECTRIC COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing General Electric turbines. GENERAL ELECTRIC COMPANY is sued as a Product Defendant. Plaintiffs' claims against GENERAL ELECTRIC COMPANY arise out of this Defendant's business activities in the State of North Carolina.

38.     Defendant, **GOULDS PUMPS, INCORPORATED**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, GOULDS PUMPS, INCORPORATED mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Goulds pumps. GOULDS PUMPS, INCORPORATED is sued as a Product Defendant. Plaintiffs' claims against GOULDS PUMPS, INCORPORATED arise out of this Defendant's business activities in the State of North Carolina.

39.     Defendant, **GRINNELL LLC**, d/b/a GRINNELL CORPORATION, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Florida. After due diligence, Plaintiffs believe that GRINNELL LLC is an indirect, wholly-owned subsidiary of Johnson Controls International plc f/k/a Tyco International plc (an Irish public limited company that is the successor to Tyco International Ltd.). Johnson Controls International plc is a publicly-held entity that has no parent company. At all times material hereto, GRINNELL LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Grinnell boilers, heaters and valves, as well as the installation and removal of asbestos-containing thermal insulation and materials. GRINNELL LLC is sued as a Product Defendant. Plaintiffs' claims against GRINNELL LLC arise out of this Defendant's business activities in the State of North Carolina.

40.     Defendant, **HERCULES LLC**, f/k/a HERCULES INCORPORATED, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Delaware. After due diligence, Plaintiffs believe that HERCULES LLC is composed of a sole member, ISP Global Technologies Inc., a Delaware corporation. At all times material hereto, HERCULES LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Haveg pipes. HERCULES LLC is sued as a Product Defendant. Plaintiffs' claims against HERCULES LLC arise out of this Defendant's business activities in the State of North Carolina.

41.     Defendant, **HOK GROUP, INC.** f/k/a HELLMUTH, OBATA AND KASSABAUM, INC., individually and as successor-in-interest to CRS SIRRINE as successor-in-interest to J.E. SIRRINE, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Missouri. At all times material hereto, HOK GROUP, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the design of facilities that included the use of asbestos-containing materials, and the installation and removal of asbestos-containing thermal insulation and materials. HOK GROUP, INC. is sued as a Product Defendant. Plaintiffs' claims against HOK GROUP, INC. arise out of this Defendant's business activities in the State of North Carolina.

42.     Defendant, **HOWDEN NORTH AMERICA INC.,** f/k/a HOWDEN BUFFALO INC., individually and as successor-in-interest to BUFFALO FORGE COMPANY, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, HOWDEN NORTH AMERICA INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Buffalo Forge fans. HOWDEN NORTH AMERICA INC. is sued as a Product Defendant. Plaintiffs' claims against HOWDEN NORTH AMERICA INC. arise out of this Defendant's business activities in the State of North Carolina.

43.     Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a corporation incorporated under the laws of the State of New York with its principal place of business in New York. METROPOLITAN LIFE INSURANCE COMPANY has done and does business in

the State of North Carolina. METROPOLITAN LIFE INSURANCE COMPANY is named as a conspiracy defendant.

44. Defendant, **MINE SAFETY APPLIANCES COMPANY, LLC** was and is a limited liability company incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. MINE SAFETY APPLIANCES COMPANY, LLC is composed of a sole member, MSA Safety Incorporated, a Pennsylvania corporation. At all times material hereto, MINE SAFETY APPLIANCES COMPANY, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, or products fraudulently marketed to prevent asbestos exposure including, but not limited to, MSA masks and respirators. MINE SAFETY APPLIANCES COMPANY, LLC is sued as a Product Defendant. Plaintiffs' claims against MINE SAFETY APPLIANCES COMPANY, LLC arise out of this Defendant's business activities in the State of North Carolina.

45. Defendant, **RUST ENGINEERING & CONSTRUCTION, INC.**, individually and as successor-in-interest to SIRRINE ENVIRONMENTAL CONSULTANTS, INC., was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, RUST ENGINEERING & CONSTRUCTION, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the design of facilities that included the use of asbestos-containing materials, and the installation and removal of asbestos-containing thermal insulation and materials. RUST ENGINEERING & CONSTRUCTION, INC. is sued as a Product Defendant. Plaintiffs' claims against RUST ENGINEERING &

CONSTRUCTION, INC. arise out of this Defendant's business activities in the State of North Carolina.

46. Defendant, **RUST INTERNATIONAL INC.**, individually and as successor-in-interest to SIRRINE ENVIRONMENTAL CONSULTANTS, INC., was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, RUST INTERNATIONAL INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the design of facilities that included the use of asbestos-containing materials, and the installation and removal of asbestos-containing thermal insulation and materials. RUST INTERNATIONAL INC. is sued as a Product Defendant. Plaintiffs' claims against RUST INTERNATIONAL INC. arise out of this Defendant's business activities in the State of North Carolina.

47. Defendant, **UNION CARBIDE CORPORATION**, was and is a corporation incorporated under the laws of the State of New York with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing raw asbestos fibers. UNION CARBIDE CORPORATION is sued as a Product Defendant. Plaintiffs' claims against UNION CARBIDE CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

48. Defendant, **VIACOMCBS INC.**, f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRICT CORPORATION, was and is a corporation

incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, VIACOMCBS INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Westinghouse turbines. VIACOMCBS INC. is sued as a Product Defendant. Plaintiffs' claims against VIACOMCBS INC. arise out of this Defendant's business activities in the State of North Carolina.

49.     Defendant, **VIKING PUMP, INC.**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Iowa. At all times material hereto, VIKING PUMP, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Viking pumps. VIKING PUMP, INC. is sued as a Product Defendant. Plaintiffs' claims against VIKING PUMP, INC. arise out of this Defendant's business activities in the State of North Carolina.

50.     Defendant, **VISTRA CORP.**, f/k/a VISTRA ENERGY CORP., individually and as successor-in-interest to CRS SIRRINE a/k/a CRSS, as successor-in-interest to J.E. SIRRINE, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, VISTRA CORP. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the design of facilities that included the use of asbestos-containing materials, and the installation and removal of asbestos-containing thermal insulation

and materials. VISTRA CORP. is sued as a Product Defendant. Plaintiffs' claims against VISTRA CORP. arise out of this Defendant's business activities in the State of North Carolina.

51. Defendant, **VISTRA INTERMEDIATE COMPANY LLC**, individually and as successor-in-interest to CRSS INC., was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Texas. After due diligence, Plaintiffs believe that VISTRA INTERMEDIATE COMPANY LLC is a direct and wholly owned subsidiary of Vistra Corp., a Delaware corporation. At all times material hereto, VISTRA INTERMEDIATE COMPANY LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the design of facilities that included the use of asbestos-containing materials, and the installation and removal of asbestos-containing thermal insulation and materials. VISTRA INTERMEDIATE COMPANY LLC is sued as a Product Defendant. Plaintiffs' claims against VISTRA INTERMEDIATE COMPANY LLC arise out of this Defendant's business activities in the State of North Carolina.

52. Defendant, **THE WILLIAM POWELL COMPANY**, was and is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio. At all times material hereto, THE WILLIAM POWELL COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Powell valves. THE WILLIAM POWELL COMPANY is sued as a Product Defendant. Plaintiffs' claims against THE WILLIAM POWELL COMPANY arise out of this Defendant's business activities in the State of North Carolina.

## BACKGROUND FACTS

53.    Plaintiffs bring this action for monetary damages as a result of Plaintiff Augustus A. Adams contracting an asbestos-related disease.

54.    Plaintiff Augustus A. Adams was diagnosed with Mesothelioma on August 17, 2021.

55.    Plaintiff's mesothelioma was caused by his exposure to asbestos during the course of his employment.

56.    During his work history, Plaintiff was exposed to asbestos through his work as a maintenance worker and an insulator while employed by E.I. du Pont de Nemours & Company at its facility in Kinston, North Carolina (the "DuPont Kinston Facility") from approximately the early 1950s to the 1980s. Plaintiff worked performing a variety of tasks including but not limited to, maintaining asbestos-containing equipment, and removing and replacing asbestos containing insulation, throughout the DuPont Kinston facility.  All of these activities exposed Plaintiff to asbestos and asbestos-dust.

57.    Further, Plaintiff worked with, or in close proximity to, other tradesmen, such as insulators and equipment mechanics, who worked with asbestos-containing materials including but not limited to, asbestos-containing equipment and insulation, as well as other asbestos-containing materials, manufactured, sold, supplied and/or distributed by Defendants identified above.  All of these activities exposed Plaintiff to asbestos and asbestos-dust.

58.    Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

## FIRST CAUSE OF ACTION
### DEFECTIVE DESIGN

59. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

60. This cause of action is brought against the Product Defendants.

61. At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment, or are otherwise jointly and severally liable due to their involvement in the underlying facts.

62. The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment, to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment, came into use by Plaintiff Augustus A. Adams or by coworkers who were working with asbestos-containing materials in close proximity to Plaintiff.

63. Plaintiff worked with and/or was exposed to the asbestos and asbestos-containing materials, products or equipment, mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most or all of the exposure being within the State of North Carolina.

64. Plaintiff was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

65. Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design,

manufacture, and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

66.     Defendants knew, or should have known, that persons working around asbestos-containing products in their employment, would be exposed to asbestos in quantities that could cause mesothelioma.

67.     Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

68.     Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment, were deleterious, poisonous, and highly harmful to Plaintiff's body, lungs, respiratory system, skin, and health.

69.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment, into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the

risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

70.     The relevant Defendants who were involved in manufacturing, designing and producing the asbestos-containing products herein had a duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design.

71.     While non-asbestos alternative designs and formulations of the relevant products and equipment were available prior to when some or all of the Plaintiff's injurious exposure occurred, the relevant Defendants negligently failed to adopt a non-asbestos design and formulation during the pertinent times.

72.     Under N.C. Gen. Stat. § 99B-6, the relevant Defendants are liable for inadequate design or formulation in that they qualify as manufacturers within the scope of the statute and they acted unreasonably in designing or formulating the product when there was a safer, practical, feasible, and otherwise reasonable alternative design or formulation.

73.     During some or all of the pertinent times, asbestos-free product designs and formulations could have accomplished the same functions as the asbestos products.

74.     Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to the Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment placed by Defendants in the stream of commerce.

75.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment, and the resulting injuries and damages to Plaintiff were reasonably foreseeable or should have been reasonably foreseen by Defendants.

76. Defendants acted unreasonably by continuing to use a known cancer-causing product, to-wit: asbestos.

77. At the time the products left Defendants' control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

78. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff Augustus A. Adams developed mesothelioma. As a consequence of this mesothelioma, and through no fault of his own, he was severely injured, disabled and damaged.

79. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
### FAILURE TO WARN

80. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81. This cause of action is brought against the Product Defendants.

82. Under N.C. Gen. Stat. § 99B-5, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction. The failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought. At the time the relevant asbestos-containing products left the control of the relevant Defendant manufacturers or sellers, the products without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

83.     In the alternative, after the relevant asbestos-containing products left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the products posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

84.     The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)     Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b)     Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)     Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment, to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f)     Did not recommend methods to reduce exposures;

(g)     After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

85. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

86. This cause of action is brought against the Product Defendants.

87. The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

88. The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment, were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

89. As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness, to-wit: Mesothelioma.

90. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION
## GROSS NEGLIGENCE; WILLFUL, WANTON, AND RECKLESS CONDUCT

91. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

92. This cause of action is brought against the Product Defendants.

93. Plaintiff Augustus A. Adams and others in his position worked in close proximity to the asbestos and asbestos-related materials used, sold or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff's presence, as well as others in his position,

was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

94.     The Defendants have known or should have known for decades of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of the Plaintiff and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, the Plaintiff has been severely damaged as is set forth below.

95.     The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure for many decades, thus denying Plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure.   Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

> (a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;
>
> (b)     failure to issue recall type letters to prior users;
>
> (c)     frustrating the publication of articles and literature from the 1930's through at least 1976;
>
> (d)     rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and
>
> (e)     The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

96.     The acts of the Defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment, upon the body of human beings, including Plaintiff arid others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

97.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

98.     The Defendants' above-described recurring conduct, acts, omissions, negligence, and impropriety included aggravating factors giving rise to a claim of punitive damages under Chapter 1D of the North Carolina General Statutes.

99.     Pursuant to N.C. Gen. Stat. § 1D-15(a), each Defendant is properly liable for punitive damages in this action in that Defendant is liable for compensatory damages and has committed one or more aggravating acts or omissions justifying an award of punitive damages, including without limitation, recurring acts of egregious and reckless behavior, and specific instances of willful and wanton conduct.

100.    The recurring conduct, acts, omissions, negligence, and impropriety of the Defendants were willful, wanton, malicious, and in reckless disregard for the rights and interests of the Plaintiff and justify an award of punitive damages. Accordingly, Plaintiffs demand judgment against Defendant for punitive damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**CONSPIRACY**
**(Against Defendant METROPOLITAN LIFE INSURANCE COMPANY)**

101.    Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff Augustus A. Adams was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff Augustus A. Adams' illness, injuries, and disabilities.

102.    In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

103.    Plaintiff Augustus A. Adams' unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

104.    As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or

disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Augustus A. Adams from asbestos exposure was increased, and (ii) Augustus A. Adams suffered the injuries previously described.

105.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Augustus A. Adams. Plaintiffs seek compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

## SIXTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

106.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

107.     Plaintiff Augustus A. Adams and Plaintiff Diane Adams were married December 15, 1957 and remained married at all times material hereto.

108.     As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff Augustus A. Adams, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse, Diane Adams, has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and, therefore, Plaintiff-Spouse Diane Adams is entitled to damages for her loss of consortium, both past and future.

## **DAMAGES**

109.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

110.    As a result of his exposure to asbestos attributable to Defendants, Plaintiff Augustus A. Adams has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

111.    Plaintiff has suffered great pain, extreme nervousness, and mental anguish as a direct result of his mesothelioma.

112.    Due to the nature of mesothelioma as a fatal cancer, Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; that he has been forced to remove himself from his job due to his poor health resulting in substantial lost wages and loss of earning capacity; and further, that his expected life span has been greatly shortened.

113.    As a result of his mesothelioma, Plaintiff Augustus A. Adams has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## **JURY DEMAND**

Plaintiffs respectfully request a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A.      Award the Plaintiffs compensatory damages, in an amount to be determined at trial;

B.      Award the Plaintiffs punitive damages;

C.      Award the Plaintiffs pre-judgment and post-judgment interest and any other costs,

expenses or fees to which the Plaintiffs may be entitled by law; and

D.      Award the Plaintiffs such other and further relief as is just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**

Respectfully submitted,

*/s/ William M. Graham*
William M. Graham (NC Bar #17972)
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
704-633-5244
704-633-9434 (fax)
E-Mail: bgraham@wallacegraham.com

and

Jordan Blumenfeld-James
(To be Admitted *Pro Hac Vice*)
DEAN OMAR BRANHAM SHIRLEY, LLP
302 N. Market Street, Suite 300
Dallas, TX 75202
214-722-5990
214-722-5991 (fax)
Email: jbj@dobslegal.com

**ATTORNEYS FOR PLAINTIFFS**