IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-151-FL

| | | |
|---|---|---|
| AUGUSTUS A. ADAMS and DIANE ADAMS, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| 4520 CORP INC individually and as successor-in-interest to Benjamin F. Shaw Company; 3M COMPANY f/k/a Minnesota Mining and Manufacturing Company; AIR & LIQUID SYSTEMS CORPORATION, SUCCESSOR BY MERGER TO BUFFALO PUMPS, INC. individually and as successor-in-interest to Buffalo Pumps, Inc.; AMETEK, INC. individually and as successor-in-interest to Haveg Industries, Inc., successor-in-interest to Hercules, Inc.; ARMSTRONG INTERNATIONAL, INC.; CHAMPLAIN CABLE CORPORATION individually and as successor-in-interest to Hercules, Inc., successor-in-interest To Haveg Industries, Inc.; COVIL CORPORATION; CRANE CO.; DANIEL INTERNATIONAL CORPORATION; THE DOW CHEMICAL COMPANY; FISHER CONTROLS INTERNATIONAL LLC; FLOWSERVE US INC. individually and as successor-in-interest to Lawrence Pumps, Inc., and as successor-in-interest to Edward Valves, Inc.; FLUOR CONSTRUCTORS INTERNATIONAL f/k/a/ Fluor Corporation; FLUOR CONSTRUCTORS INTERNATIONAL INC; FLUOR DANIEL SERVICES CORPORATION; FLUOR ENTERPRISES, INC.; FMC CORPORATION; FOSTER WHEELER ENERGY CORPORATION; GENERAL | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ORDER |

| | |
|---|---|
| ELECTRIC COMPANY; GOULDS PUMPS, INCORPORATED; GRINNELL LLC d/b/a Grinnell Corporation; HERCULES LLC f/k/a Hercules Incorporated; HOK GROUP, INC. f/k/a Hellmuth, Obata and Kassabaum, inc., individually and as successor-in-interest to CRS Sirrine as successor-in-interest to J.E. Sirrine ; HOWDEN NORTH AMERICA INC. f/k/a Howden Buffalo Inc., individually and as successor-in-interest to Buffalo Forge Company; METROPOLITAN LIFE INSURANCE COMPANY a wholly owned subsidiary of Metlife Inc.; MINE SAFETY APPLIANCES COMPANY, LLC; RUST ENGINEERING & CONSTRUCTION, INC. individually and as successor-in-interest to Sirrine Environmental Consultants, Inc.; RUST INTERNATIONAL, INC. individually and as successor-in-interest to Sirrine Environmental Consultants, Inc.; UNION CARBIDE CORPORATION; VIACOMCBS INC. f/k/a CBS CORPORATION, a Delaware corporation, f/k/a Viacom, Inc., successor-by-merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation; VIKING PUMP, INC.; VISTRA CORP f/k/a Vistra Energy Corp. individually and as successor-in-interest to CRS Sirrine a/k/a CRSS, as successor-in-interest to J.E. Sirrine; VISTRA INTERMEDIATE COMPANY LLC individually and as successor-in-interest to CRSS Inc.; and THE WILLIAM POWELL COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

This asbestos litigation matter is before the court on motion to dismiss for failure to state a claim (DE 35) brought by defendant Vistra Intermediate Company LLC, individually and as

successor-in-interest to CRSS, Inc. ("defendant").[1] The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion is denied.

## STATEMENT OF THE CASE

Plaintiffs commenced this action on October 8, 2021, asserting claims for injuries suffered by plaintiff Augustus A. Adams, including mesothelioma and other lung damage, from exposure to asbestos fibers during the course of his employment at the E.I. du Pont de Nemours & Company facility in Kinston, North Carolina, (the "Kinston DuPont facility"), from approximately the early 1950s to the 1980s. Plaintiffs assert claims for defective design, failure to warn, implied warranty, gross negligence, and loss of consortium.[2] Plaintiffs seek compensatory damages, punitive damages, interest, costs, and fees.

All defendants have filed answers, and the court has entered a case management order setting a July 28, 2023, deadline for discovery completion. In the meantime, defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded in opposition and defendant replied.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. "Plaintiff[[3]] was exposed to asbestos through his work as a maintenance worker and an insulator while employed by E.I. du Pont de Nemours & Company at [the DuPont Kinston Facility] from approximately the

---

[1] Hereinafter in this order, all references to "defendant" in the singular, without qualification, are to defendant Vistra Intermediate Company LLC, individually and as successor-in-interest to CRSS, Inc. All other defendants are referenced in this order specifically by their name, or collectively as "all defendants," "each defendant," or "other defendants."

[2] Plaintiffs also assert a claim for conspiracy against defendant Metropolitan Life Insurance Company, a wholly owned subsidiary of Metlife, Inc., which claim is not at issue in the instant motion.

[3] Hereinafter, all references to "plaintiff" in the singular, without qualification, are to plaintiff Augustus A. Adams only.

3

early 1950s to the 1980s." (Compl. ¶ 56). "Plaintiff worked performing a variety of tasks including but not limited to, maintaining asbestos-containing equipment, and removing and replacing asbestos containing insulation, throughout the DuPont Kinston facility." (Id.). "Further, Plaintiff worked with, or in close proximity to, other tradesmen, such as insulators and equipment mechanics, who worked with asbestos-containing materials including but not limited to, asbestos-containing equipment and insulation, as well as other asbestos containing materials, manufactured, sold, supplied and/or distributed by Defendants." (Id. ¶ 57). "All of these activities exposed Plaintiff to asbestos and asbestos-dust." (Id.).

Plaintiff was "diagnosed with Mesothelioma," an "asbestos-related disease," on August 17, 2021. (Id. ¶¶ 53-54). "Plaintiff's mesothelioma was caused by his exposure to asbestos during the course of his employment." (Id. ¶ 55). The "progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos containing products over a period of time." (Id. ¶ 13). "Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease." (Id. ¶ 58).

According to the complaint, "[e]ach Defendant, or its predecessors in interest, that manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in North Carolina and other states at times relevant to this action are referred to herein as 'Product Defendants.'" (Id. ¶ 6). "At all times relevant to this action, the Product Defendants and the predecessors of the Product Defendants for whose actions the Product Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw materials." (Id.). "Plaintiffs' claims against the Product Defendants, as defined herein, arise out of Defendants' purposeful efforts to serve directly or indirectly the market for

their asbestos and/or asbestos-containing products in North Carolina, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within North Carolina." (Id. ¶ 7).

"Each of the named Defendants is [allegedly] liable for damages stemming from its own tortious conduct or the tortious conduct of an 'alternate entity' [as defined in the complaint]." (Id. ¶ 11).

> Defendants are liable for the acts of their 'alternate entity' and each of them, in that there has been a corporate name change, Defendant is the successor by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiffs' remedy against each such 'alternate entity'; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such 'alternate entity'; such 'alternate entities' have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such 'alternate entity'; each such Defendant has the ability to assume the risk-spreading role of each such 'alternate entity;' and that each such defendant enjoys the goodwill originally attached to each 'alternate entity.'

(Id.). With respect to defendant, its "alternate entity" is CRSS Inc. (Id.). With respect to defendant Vistra Corp., its "alternate entity" is "Vistra Energy Corp., CRS Sirrine, CRSS, and J.E. Sirrine." (Id.). All defendants, or their "alternate entities" were or are "authorized to do business in the State of North Carolina," or "regularly conducted business in the State of North Carolina." (Id.).

According to the complaint, all defendants or their "alternate entities" were "engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos and products manufactured for foreseeable use with asbestos products." (Id. ¶ 18).

5

With respect to defendant, plaintiffs allege that it has a principal place of business in Texas, and that it is a subsidiary of defendant Vistra Corporation. Plaintiffs claim that it is "sued as a Product Defendant." (Id. ¶ 51). According to the complaint, it "mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, the design of facilities that included the use of asbestos-containing materials, and the installation and removal of asbestos-containing thermal insulation and materials." (Id.).

## COURT'S DISCUSSION

A.     Standard of Review

To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.     Analysis

Defendant argues that plaintiffs' claims against it fail as a matter of law because plaintiffs have not included any factual allegations in the complaint regarding the nature or identity of any product that defendant defectively designed or warranted, or about which defendant failed to warn or breached a duty. The court disagrees.

6

To state a claim for defective design under North Carolina law, a plaintiff must allege, inter alia, "that at the time of its manufacture the manufacturer acted unreasonably in designing or formulating the product, [and] that this conduct was a proximate cause of the harm for which damages are sought." N.C. Gen. Stat. § 99B-6(a) (emphasis added). With respect to a duty to warn, "a manufacturer or seller of a product, which to his actual or constructive knowledge involves danger to users has a duty to give warning of such dangers." Stegall v. Catawba Oil Co. of N.C., 260 N.C. 459, 464 (1963); see N.C. Gen. Stat. § 99B-5(a) (requiring that "the product, without an adequate warning or instruction, created an unreasonably dangerous condition," or that "the product posed a substantial risk of harm").

Similarly, for breach of implied warranty, a plaintiff must allege, inter alia, "that the goods did not comply with the warranty in that the goods were defective at the time of sale." DeWitt v. Eveready Battery Co., 355 N.C. 672, 683 (2002) (quotations omitted; emphasis added). Likewise to state a claim for negligence in a product liability action, at a minimum, a plaintiff must allege a defendant "was negligent in its design of the product, in its selection of materials, in its assembly process, or in inspection of the product." Goodman v. Wenco Foods, Inc., 333 N.C. 1, 26 (1992). Finally, a claim of loss of consortium is "derivative of" the others. Trivette v. Yount, 366 N.C. 303, 313 (2012).

Defendant faults plaintiffs for not identifying "what the product actually was that [defendant] defectively designed," or "failed to warn Plaintiff about," or that defendant "sold to Plaintiff that was allegedly dangerous." (Def's Mem. (DE 36) at 3-5). However, the complaint alleges that defendant bears responsibility for "asbestos and/or asbestos-containing products, materials, or equipment, including . . . asbestos-containing thermal insulation and materials." (Compl. ¶ 51). Moreover, these allegations are not made in isolation, but rather in the context of

allegations about plaintiff's work at a single industrial location, the Kinston DuPont facility, during a set time range, during the early 1950s to the 1980s. (Compl. ¶ 56). These allegations, accepted as true for purposes of the instant motion, are sufficient to satisfy the element of defendant's responsibility for an asbestos product that caused harm to plaintiff under the theories of liability alleged.

This result also is consistent with the decision in this district in the case Miller v. 3M Co., No. 5:12-CV-00620-BR, 2013 WL 1338694 (E.D.N.C. Apr. 1, 2013), an asbestos products liability suit in which the plaintiff brought claims against multiple different corporate defendants, and the court denied a motion to dismiss by one of those defendants. In Miller, the plaintiff included an "attachment to the complaint," in which the plaintiff "assert[ed] factual information about [the decedent's] work experience and provide[d] dates, occupations, employers and worksite locations, as well as a list of products containing asbestos to which he was allegedly exposed." Id. at *2 (emphasis added). It is a matter of judicial record that the referenced attachment did not differentiate the listed products by defendant. See Case No. 5:12-CV-620-BR, Doc. 1 (Complaint) at 21-22. The court in Miller considered these allegations sufficient to state a claim against the moving defendant. 2013 WL 1338694 at *2.

The allegations in the instant case go beyond those in Miller because plaintiffs allege asbestos exposure from a single work site, and plaintiffs describe the type of asbestos product for which each defendant allegedly is responsible. (See, e.g., Compl. ¶¶ 19, 25, 27, 31, 32, 33, 34, 41, 45, 46, 50, 51 (including "asbestos-containing thermal insulation and materials"); 41, 45, 46, 50, 51 (same, plus "design of facilities"); 52 ("Powell valves"), 49 ("Viking pumps"), 48 ("Westinghouse turbines"), 47 ("raw asbestos fibers"), 44 ("MSA masks and respirators"), 42 ("Buffalo Forge fans"), 24, 40 ("Haveg pipes"), 39 ("Grinnel boilers, heaters and valves"), 38

8

Case 4:21-cv-00151-FL   Document 151   Filed 05/13/22   Page 8 of 11

("Gould pumps"), 37 ("General Electric turbines"), 36 ("Foster Wheeler boilers"), 35 ("Link-Belt cranes"), 30 ("Lawrence pumps"), 29 ("Fisher valves"), 28 ("Dowtherm products"), 26 ("Crane valves"), 23 ("Armstrong steam traps and strainers"), 22 ("Chemtite pipes"), 21 ("Buffalo pumps"), 20 ("3M masks").

Defendant suggests that plaintiffs' claims against it fail because defendant "is being sued for its provision of professional services, namely architectural and engineering services, for the facility where Plaintiff was allegedly exposed." (Defs' Mem. at 2). Defendant contends that "[a] simple search of the company makes clear the nature of its business." (Id.) According to defendant, it "is in fact being sued for its provision of professional services, not for its provision of a product." (Id. at 3). None of these assertions are made in the complaint, however, and no such limitations are required based on the facts alleged in the complaint.

Indeed plaintiffs assert to the contrary that defendant is "sued as a Product Defendant." (Compl. ¶ 51). That term is defined in the case as an entity that "manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in North Carolina." (Id.). While plaintiffs refer to "design of facilities," in part, in describing the product for which defendant and four others are responsible, their allegations do not limit defendant to that role. (E.g., Compl. ¶ 51). Accordingly, the instant motion is not the proper vehicle for defendant to challenge the merits or accuracy of the allegations of the complaint, as it does in its brief. "A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts, the merits of a claim," nor the "veracity" of the complaint. Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). Defendant's challenges to plaintiff's allegations, thus, are more appropriately raised in the context of an answer, which it has done separately, or at a later juncture in this case.

Defendant also suggests that plaintiffs fail to allege facts supporting other elements of certain claims raised by plaintiffs. For example, defendants argue that plaintiffs "have failed to allege any facts showing "how [the product] was defective or otherwise merchantable, or how Plaintiff was injured by the unidentified product." (Def's Mem. at 4). The complaint, however, alleges facts, when taken together in context, give rise to a plausible inference that the product supplied by defendant was defective or otherwise merchantable because it contained asbestos. (See, e.g., Compl. ¶ 51 (alleging defendant's responsibility for "asbestos and/or asbestos-containing products, materials, or equipment, including . . . asbestos-containing thermal insulation and materials"); ¶ 88 (alleging that "certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment"). Likewise, the complaint alleges such products caused injury to plaintiff in that his "cumulative exposure to asbestos as a result of the acts and omissions of Defendants and their defective products, . . . was a substantial factor in causing Plaintiff's mesothelioma." (Id. ¶ 11).

Defendant argues that plaintiffs "have abandoned" their claims of defective design and breach of implied warranty, because plaintiffs failed to respond to defendant's arguments regarding these claims. (Def's Mem. at 2). Defendant cites to James v. Omni Charlotte Hotel, No. 318CV00609FDWDCK, 2019 WL 3940884 (W.D.N.C. Aug. 20, 2019), for the proposition that "[i]t is well-established that such a failure may lead to dismissal of Plaintiffs' claims." (Def's Mem. at 2). James, however, does not so state. Rather, it states that "[p]laintiff was advised the failure to respond to a motion to dismiss could result in Defendant bring [sic] granted the relief sought – dismissal of the Complaint." 2019 WL 3940884 at *1 (emphasis added).

10

Case 4:21-cv-00151-FL   Document 151   Filed 05/13/22   Page 10 of 11

In any event, <u>James</u> stands for the unremarkable proposition that a failure to respond <u>could</u> lead to dismissal, not that it must. <u>Id.</u> Indeed, the court in <u>James</u> proceeded to evaluate the plaintiff's claims, and denied the motion to dismiss as to some claims, even though the plaintiff completely failed to respond to the motion to dismiss. <u>Id.</u> Moreover, in this instance, it is not clear from plaintiffs' response that they have "abandoned these claims" against defendant. (Def's Mem. at 2). They request denial of the motion in full, they contend that they make "viable legal claims" against defendant, and they make arguments applicable to all of their claims. (Pls' Mem. at 1-5). The fact that they make additional arguments under separate headings for their failure to warn, negligence, and loss of consortium, claims does not compel dismissal of the others.

In sum, plaintiffs' allegations against defendant are sufficient to state claims upon which relief can be granted. Therefore, defendant's motion must be denied.

## CONCLUSION

Based on the foregoing, defendant's motion (DE 35) is DENIED.

SO ORDERED, this the 13th day of May, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge